```
           UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF NEW YORK
           ------------------------------x

           UNITED STATES OF AMERICA,

                    v.                             04 CR 356 (KBF)

           HAROON RASHID ASWAT,

                         Defendant.

           ------------------------------x
                                                   New York, N.Y.
                                                   October 21, 2014
                                                   4:35 p.m.

           Before:

                         HON. KATHERINE B. FORREST,

                                                   District Judge


                                  APPEARANCES

           PREET BHARARA
                United States Attorney for the
                Southern District of New York
           JOHN P. CRONAN
                Assistant United States Attorney

           PETER E. QUIJANO
           ANNA SIDERIS
                Attorneys for Defendant

           ALSO PRESENT:  Pretrial Officer Emily Rosado
           Paralegal Specialist Brandon DeShields
```

1    THE DEPUTY CLERK:  In the matter of the United States
2 v. Haroon Rashid Aswat, 04 CR 356.  Counsel, please state your
3 names for the record.
4    MR. CRONAN:  John Cronan for the government.  I'm
5 joined at counsel table by Brandon DeShields who is a paralegal
6 in the U.S. attorney's office, and Pretrial Services Officer
7 Emily Rosado.
8    THE COURT:  Good afternoon.
9    MR. QUIJANO:  Good afternoon, Judge Forrest.  For
10 defendant Haroon Rashid Aswat, Peter E. Quijano and Anna
11 Sideris.  Mr. Aswat is present and ready to proceed.
12    THE COURT:  I want to start by informing Mr. Aswat of
13 certain rights that he has, and I want to discuss the
14 appointment of counsel.  I want to get a report from the
15 government, and I want to get to next steps.
16    Does anyone have anything else on the agenda we ought
17 to be dealing with right now?  We're also going to do the
18 arraignment as part of that.
19    MR. CRONAN:  Nothing else from us.
20    MR. QUIJANO:  A few matters I can pick up at the end.
21    THE COURT:  Mr. Aswat, it is very important that I
22 make sure that you are able to hear me and that you're able to
23 understand me.
24    Do you understand and speak English?
25    You have to answer audibly if you can, sir.

1             THE DEFENDANT:  Yes, I do.

2             THE COURT:  I want to tell you about certain rights
3    that you have.  Do you understand that you have the right to
4    remain silent and you don't have to make any statements at all?
5    Do you understand that?

6             He said "I do."  Did you say "I do"?

7             THE DEFENDANT:  I do.

8             THE COURT:  Let's see if we can move up the
9    microphone.  Maybe we can hear things a little bit better.

10            Do you understand that anything that you say can be
11   used against you?

12            THE DEFENDANT:  I do.

13            THE COURT:  Do you understand that even if you have
14   made any statements to authorities, you need not make any
15   further statements?

16            Do you understand that?

17            THE DEFENDANT:  I do.

18            THE COURT:  Do you understand that you've got a right
19   to be represented by a lawyer at these proceedings, indeed, all
20   proceedings relating to this matter?

21            THE DEFENDANT:  I do.

22            THE COURT:  Do you understand that if you can't afford
23   an attorney, an attorney would be appointed for you?

24            THE DEFENDANT:  I do.

25            THE COURT:  All right.  Do you understand that you

1   have a right to have an attorney present not only with you here
2   in these court proceedings and any future court proceedings,
3   but any time any authorities speak to you, you have a right to
4   have an attorney present?
5            Do you understand that?
6            THE DEFENDANT:  I do.
7            THE COURT:  Now, when I say speak to the authorities,
8   I mean questioned by authorities.  Do you understand that?
9            THE DEFENDANT:  I do.
10           THE COURT:  I have received a copy of a financial
11  affidavit.  And that financial affidavit appears to indicate
12  that you don't have any resources for an attorney.  Let me show
13  it to you and make sure this is in fact your signature on this
14  affidavit.  I'm going to have you swear to the truth and
15  accuracy of that.
16           Is that your signature, sir?
17           THE DEFENDANT:  That's right, yes.
18           THE COURT:  Do you swear that the information
19  contained on that page is truthful and accurate?
20           THE DEFENDANT:  Yes.
21           THE COURT:  Based upon the Court's review of this
22  financial affidavit, there is an indication that Mr. Aswat does
23  not have the financial resources to pay for an attorney, so the
24  Court will appoint counsel to represent Mr. Aswat, and appoints
25  Mr. Quijano and Ms. Sideris.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1   have a right to have an attorney present not only with you here
2   in these court proceedings and any future court proceedings,
3   but any time any authorities speak to you, you have a right to
4   have an attorney present?
5            Do you understand that?
6            THE DEFENDANT:  I do.
7            THE COURT:  Now, when I say speak to the authorities,
8   I mean questioned by authorities.  Do you understand that?
9            THE DEFENDANT:  I do.
10           THE COURT:  I have received a copy of a financial
11  affidavit.  And that financial affidavit appears to indicate
12  that you don't have any resources for an attorney.  Let me show
13  it to you and make sure this is in fact your signature on this
14  affidavit.  I'm going to have you swear to the truth and
15  accuracy of that.
16           Is that your signature, sir?
17           THE DEFENDANT:  That's right, yes.
18           THE COURT:  Do you swear that the information
19  contained on that page is truthful and accurate?
20           THE DEFENDANT:  Yes.
21           THE COURT:  Based upon the Court's review of this
22  financial affidavit, there is an indication that Mr. Aswat does
23  not have the financial resources to pay for an attorney, so the
24  Court will appoint counsel to represent Mr. Aswat, and appoints
25  Mr. Quijano and Ms. Sideris.

1            MR. QUIJANO:  Thank you, your Honor.

2            THE COURT:  Now, have you seen a copy of the

3    indictment that contains the charges against you?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Have you had a chance to talk with

6    Mr. Quijano about the charges against you?

7            THE DEFENDANT:  I have, yes.

8            THE COURT:  Let me just be clear what the charging

9    instrument is that I'm looking at.  I'm working off an

10   instrument that is labeled S2 04-356.

11           Mr. Cronan, is that the correct instrument?

12           MR. CRONAN:  Yes, your Honor.

13           THE COURT:  Mr. Aswat, do you understand that you're

14   charged in Counts Three, Four, Five, and Six of that

15   indictment?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Would you like to have me read to you the

18   text of those counts here now in open court?

19           THE DEFENDANT:  No, it's not necessary.

20           THE COURT:  Do you understand that in Count Three

21   you're charged with participating in a conspiracy to provide

22   and conceal material support and resources to terrorists?

23           THE DEFENDANT:  Yes.

24           THE COURT:  Do you understand that in Count Four

25   you're charged with providing and concealing material support

1    and resources to terrorists?
2             THE DEFENDANT:  Yes.
3             THE COURT:  Do you understand that in Count Five
4    you're charged with participating in a conspiracy to provide
5    material support and resources to a foreign terrorist
6    organization?
7             THE DEFENDANT:  Yes.
8             THE COURT:  Do you understand that in Count Six you're
9    charged with providing material support and resources to a
10   foreign terrorist organization?
11            THE DEFENDANT:  Yes.
12            THE COURT:  How do you plead, sir, to Count Three,
13   guilty or not guilty?
14            THE DEFENDANT:  Not guilty.
15            THE COURT:  How do you plead, sir, to Count Four,
16   guilty or not guilty?
17            THE DEFENDANT:  Not guilty.
18            THE COURT:  How do you plead, sir, to Count Five,
19   guilty or not guilty?
20            THE DEFENDANT:  Not guilty.
21            THE COURT:  How do you plead, sir, to Count Six,
22   guilty or not guilty?
23            THE DEFENDANT:  Not guilty.
24            THE COURT:  All right.  Thank you.
25            I understand the defendant has been extradited from

1     the U.K., so describe to me, Mr. Cronan, the government's view
2     on remand.  Now would be the typical time we would discuss bail
3     and remand.  But obviously it is a different situation.
4              MR. CRONAN:  Yes, your Honor.  The government does
5     seek remand both on danger to the community and risk of flight
6     grounds.
7              THE COURT:  Mr. Quijano, have you had an opportunity
8     to consider what you would --
9              MR. QUIJANO:  We consent to an order of detention,
10    your Honor.
11             THE COURT:  Then Mr. Aswat is remanded to the custody
12    of the United States marshals.  I will of course listen to a
13    bail application, if one is brought to me, at any point in
14    time.  I always make myself available for such applications.
15    All right.
16             Let's turn now to a report from the government on
17    where you think things are going from here, unless you think
18    I've left anything out in terms of the initial appearance and
19    the arraignment.  And then I'd like to hear from Mr. Quijano if
20    he has additional matters he'd like to raise.
21             Mr. Cronan.
22             MR. CRONAN:  Yes, your Honor.  I guess maybe I'll
23    start with discovery, if that's okay with the Court.
24             THE COURT:  Yes.
25             MR. CRONAN:  I guess by way of background, the

1    government's proof against Mr. Aswat will be very similar or

2    largely almost identical to a subset of the proof that was

3    offered in the trial of Mustafa Kamel Mustafa earlier this

4    year.  Therefore, what we've started with is providing

5    Mr. Quijano with the transcript of the Mustafa trial, and then

6    within the next week we plan to provide him with all the trial

7    exhibits from the Mustafa trial, including all the videos and

8    audio recordings and the transcripts.

9             In addition to that, we will be putting Mr. Quijano in

10   contact with the vendor that was used in the Mustafa trial or

11   the two vendors, I should say, Dupe Coop and CACI.  We'll be

12   doing that within the next week as well.

13            We would propose within the next 45 days that we be

14   allowed to complete our production of discovery in this case,

15   which will be completion of the discovery provided in the Abu

16   Hamza case.  We will provide Mr. Quijano with an index of the

17   materials at those two vendors to help him identify which

18   materials he may want to focus on.

19            Then any particular discovery that is specific to

20   Mr. Aswat, whether that be materials relating to his

21   extradition, to the extent there are any statements that he may

22   have made in the past, and any evidence, any materials that may

23   have been recovered from him at any point.  We would propose,

24   like I said, 45 days to do that.

25            I've already spoken with Mr. Quijano about protective

1  orders, and I believe we are in agreement with a protective
2  order for both unclassified and classified discovery.  We will
3  be submitting them to your Honor's consideration shortly.
4  Classified discovery I do not expect to be voluminous at all.
5  I think we may be looking at 80 pages or so as classified
6  discovery.
7           THE COURT:  As I understand it, both Ms. Sideris and
8  Mr. Quijano, you have the appropriate classifications?
9           MR. QUIJANO:  Your Honor, that is correct.  To be
10 clear, we've had top secret clearance for an excess of five
11 years.  Over the summer we went through the process to update
12 that.  I spoke with Michael Macisso, the court security
13 officer, on this matter last night.  He assures me even though
14 that formal process is not completed, he does deem us to have
15 the necessary clearance to review any classified material in
16 this case.
17          THE COURT:  All right.  Terrific.  Thank you very
18 much.
19          MR. CRONAN:  With respect to any classified
20 litigation, and I say this with a slight caveat just in case we
21 find something that requires classified litigation, but at the
22 moment we don't anticipate there being any.
23          So that's where we stand, your Honor, with discovery.
24 Would you like me to address --
25          THE COURT:  Before you go on, let me just find out

1    from you how big you think the volume of additional material
2    relating to Mr. Aswat is.  Is it very small?  What does that
3    consist of?
4             MR. CRONAN:  Sure.  It would not be large at all.  I
5    think some of the stuff we would be producing would be in an
6    excess of caution, such as materials relating to his
7    extradition, which I don't think technically falls under Rule
8    16, but we will be providing it here.  That would be our
9    extradition application for Mr. Aswat, judicial rulings, stuff
10   like that.  There have been about nine years of extradition
11   proceedings both in the U.K. and before the European Court of
12   Human Rights, so there are quite a few decisions out there.
13   But it is not a huge amount of material.
14            In addition to that, the discovery produced in the
15   Mustafa trial I believe included materials that were recovered
16   from Mr. Aswat when he was arrested.  That's not a lot of
17   materials.  I don't have the exact number in front of me, but
18   we're not talking about a huge amount of materials.  And then I
19   believe there would be a small number of materials regarding
20   statements that Mr. Aswat or interviews of Mr. Aswat in the
21   past.
22            THE COURT:  All right.  Thank you.  Was there anything
23   else you needed to cover?
24            MR. CRONAN:  With respect to discovery, that's it,
25   your Honor.

1            THE COURT:  Mr. Quijano?

2            MR. QUIJANO:  Your Honor, should I first address

3    scheduling?

4            THE COURT:  Sure, yes.

5            MR. QUIJANO:  As the Court is aware, the extradition

6    process also involved a large discussion regarding the

7    defendant's medical situation.  As a result how that could

8    impact where he will be detained.  It is my belief he will be

9    detained outside of this district.

10           In light of that, in light of the material we need to

11   review, I was going to suggest 120 days for the next status

12   conference.  Obviously, if there is any need to appear before

13   the Court before that date, we could communicate with the

14   Court.

15           THE COURT:  Well, here's what I would like to do.  As

16   I understand it, there may be an application to have an

17   assessment in another jurisdiction for any medical needs.  And

18   that is going to occur imminently.

19           MR. QUIJANO:  Regarding competency?

20           THE COURT:  Or any other medical issues which need to

21   be attended to.

22           MR. QUIJANO:  May I have a moment?

23           THE COURT:  Yes.  Certainly.

24           (Pause)

25           MR. QUIJANO:  Your Honor, at this point, and I should

1    preface we have had an opportunity to confer extensively with
2    Mr. Aswat's barristers in the U.K. as well as had an
3    opportunity to confer with the government extensively and
4    reviewed some of the material.
5             We've just had the opportunity to meet personally with
6    Mr. Aswat.  At this point, I do not anticipate any kind of an
7    application regarding competency.  As a result, it is my
8    understanding that, again, based on some other assurances that
9    were made at the time of extradition, we do not expect
10   Mr. Aswat to be detained in this district.  I expect him to be
11   detained at another facility that is equipped to deal with his
12   medical circumstances.  That will entail us having to travel to
13   that location to obviously confer with the client.  That's why
14   I was thinking perhaps 120 days is realistic.
15            THE COURT:  All right.  Let me hear from the
16   government on that sort of timing.  And I know that the Mustafa
17   transcript and those materials are voluminous, and so certainly
18   that time can be well spent in reviewing all of that material.
19   What I'd like to get a sense of from each of you is whether it
20   makes sense to have a report to the Court in the form of a
21   letter as to the status of things in say 90 days so we can see
22   how things are going, and see whether or not the 120 is the
23   time that makes sense and also to get a potential motion
24   schedule from you, Mr. Quijano and Ms. Sideris, if that makes
25   sense to you first.

1            MR. QUIJANO:  It does, your Honor.
2            THE COURT:  Mr. Cronan, is there any reason why from
3    the government's point of view 120 days does not work?
4            MR. CRONAN:  I think that's reasonable, your Honor.
5            THE COURT:  So 120 days from now is January 21.  So
6    we'll set down a conference.
7            Joe, can you give me a conference in that time frame.
8            THE DEPUTY CLERK:  January 23.  Friday, January 23, at
9    11 a.m.
10           THE COURT:  Does that work for you folks?
11           MR. QUIJANO:  It couldn't be the 22nd at 11?
12           THE DEPUTY CLERK:  No.
13           MR. QUIJANO:  Then I guess it is the 23rd.
14           THE COURT:  All right.  The 23rd at 11.  And then on
15   why don't we say December 22, let me get a report from you
16   folks as to the status, and also a proposal from you,
17   Mr. Quijano, as to any motions that you believe are
18   appropriate.  Those that you know about then.  And if you
19   believe there is going to be a need for any kind of hearing
20   relating to any motions, if you have an issue with timing in
21   that regard, you'll let me know.
22           MR. QUIJANO:  Of course, your Honor.
23           THE COURT:  Then what I'd like to do is to get a sense
24   first in December as to what we're looking at, and then to set
25   a trial schedule after that.

1           I don't know how long it is going to take,
2    Mr. Quijano, for you and Ms. Sideris to get through the
3    material.  It look a long time in terms of the Mustafa trial,
4    but that was really a totally different situation with lots of
5    audiotapes.  I don't know that those are relevant to Mr. Aswat.
6    And so there may be a lot of material that is just there, but
7    that is not relevant.  You folks will make that determination.
8    But, I would be thinking of something in the summertime or
9    early fall of next year, if that makes sense to you folks.
10   That's the time frame I think we should be thinking about.  We
11   can set it in December.
12           Any general reaction?  Too long?  Too short?
13           MR. QUIJANO:  Well, it is not too long.  My concern is
14   the rest of my trial calendar.  I think that's realistic.
15           THE COURT:  Mr. Cronan, from the government's point of
16   view?
17           MR. CRONAN:  The same.  It seems realistic.
18           THE COURT:  It may make sense in December for you
19   folks to confer about the time frames when you've got
20   availability for trial and make some suggestions in that
21   regard.  And then I'll look at my calendar and see if we can
22   clear some things out.  Let's shoot for something early
23   September.  Hopefully you can slip us in.  We've got enough
24   time between now and then, it is 11 months away, shouldn't be a
25   big deal to capture that time.

1            So we've got our next steps.  Now, is there anything

2  else that we should do right now?

3            MR. CRONAN:  Your Honor, the only other thing would be

4  the government would move for the exclusion of time between now

5  and January 23.  The purpose of the exclusion is to serve the

6  ends of justice, to allow the defense to review the discovery

7  in this case, and consider any motions.

8            THE COURT:  Mr. Quijano?

9            MR. QUIJANO:  We think that's appropriate, your Honor.

10           THE COURT:  The Court does find it is in the interest

11 of justice to prospectively exclude time between today's date

12 and January 23, 2015, which is our next scheduled conference,

13 to allow time for the defendant and his counsel to review the

14 discovery in this matter, to consider any potential motions,

15 and also to discuss trial strategy and timing.  And those

16 interests are in the interest of justice and outweigh the

17 interest of the defendant and the public in a speedy trial.

18 That time is prospectively excluded.

19           Anything further we should do right now?

20           MR. QUIJANO:  I suppose it would fall under the

21 category of medical attention request.  As the Court is aware,

22 Mr. Aswat's medical condition was extensively reflected in the

23 extradition papers as well as I believe on the medication he's

24 currently receiving, prescribed medication.  Specifically,

25 there are three substances, one is amisulperide, and the other

1   one is sertraline.  He takes those daily at 10 o'clock in the
2   evening U.K. time, which is right about now.  Also, when needed
3   he takes zopiclone.  He takes that to help him sleep.
4              I understand further based on conversations I had
5   earlier that the medication did travel with him.  I think it is
6   still in the possession of the marshals.  I believe the
7   marshals are aware of this.  And I would ask that the Court
8   order that he be given the prescribed medication, which I
9   assume he took as recently as 24 hours ago.
10             THE COURT:  I don't know if a special order is needed,
11  but I give you one because it is important.  And I think
12  hopefully it would occur with or without an order.  But it is
13  important that the defendant receive the medication as stated
14  in the prescribed dosages.  I'm sure the marshals are aware of
15  that already since it traveled with the defendant.  But it is
16  important to make sure that schedule is adhered to.
17             Can I count on the marshals to do that?
18             THE MARSHAL:  Yes, your Honor.
19             THE COURT:  Thank you, sir.
20             MR. QUIJANO:  Thank you, your Honor.
21             THE COURT:  Anything else?
22             MR. QUIJANO:  One moment.
23             (Pause)
24             MR. QUIJANO:  May I have a moment, your Honor?
25             THE COURT:  Yes.

```
Eal3aswc                        Arraignment
```

1              (Pause)
2              MR. CRONAN:  Your Honor, the last point maybe just in
3      an excess of caution, for security reasons we cannot discuss
4      specifically where Mr. Aswat will be housed.  Although, your
5      Honor is aware that a location was discussed previously.  I
6      assume the Court has no objection to the marshals transferring
7      Mr. Aswat to that location.
8              THE COURT:  No.  The Court's understanding is
9      Mr. Aswat will be transferred to another jurisdiction, and that
10     that will occur I believe first thing in the morning.  And that
11     should occur, if that is the arrangement which has been
12     reached.
13             MR. CRONAN:  Thank you, your Honor.
14             MR. QUIJANO:  Thank you, your Honor.  I have nothing
15     further.
16             THE COURT:  Thank you.  We are adjourned.
17                                o0o
18
19
20
21
22
23
24
25